UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

AEGIS OIL, LLC, and
PATRICK REAGAN BEASON,

      Defendants.

_____/

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges and states as follows:

### I.  INTRODUCTION

1. The Commission brings this action to enjoin Aegis Oil, LLC ("Aegis") and Patrick Reagan Beason, President and CEO of Aegis (collectively, "Defendants") from further violations of the anti-fraud and registration provisions of the federal securities laws.

2. From at least October 2010 through October 2015, Aegis and Beason raised approximately $35 million from approximately 250 investors nationwide through a series of unregistered offerings of securities in 15 oil and gas development projects managed by Aegis, in which certain misrepresentations and omissions were made.

3. The securities were primarily sold in the form of "units," representing the portion of the interest the investor would have in a particular project.  Depending on the project, available units for purchase ranged from 10 to 100, and were available for fractional purchase.

4. Aegis solicited investors primarily through a network of independent sales agents located throughout the country who would cold-call potential investors. The purported purpose of the Aegis offerings was to fund oil and gas development projects that Aegis and Beason were to oversee.

5. Aegis and Beason made material misrepresentations and omissions orally and in written offering materials concerning the use of investor proceeds, the projected oil production and income from the investment, and Beason's disciplinary history.

6. By engaging in this conduct, Defendants violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)]; Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]; and Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)]. Unless restrained and enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

7. The Commission also seeks disgorgement of all ill-gotten gains, including prejudgment interest thereon; an order directing the Defendants to pay civil money penalties; and any other relief that may be necessary and appropriate.

## II. DEFENDANTS

8. Aegis is a Texas limited liability company established in 2009 with its principal place of business in Plano, Texas. Aegis was the managing venturer of 15 oil and gas projects. Aegis has never been registered with the Commission in any capacity and has not registered any offering of securities under the Securities Act or any class of securities under the Exchange Act.

9. Beason, age 63, resides in Fairview, Texas. During the relevant period, Beason was the President and CEO of Aegis. From approximately August 1991 through December 1991,

Beason was associated with three registered broker-dealers, and held Series 22 and 63 licenses. In January 1996, Wisconsin securities regulators issued an order against Beason prohibiting him from offering and selling unregistered securities in connection with an unrelated, prior offering. Similarly, in April 2007, Illinois regulators issued an order prohibiting Beason from offering and selling securities in that state based on his anti-fraud and registration violations stemming from another unrelated offering.

### III.  JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

11. This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because, among other things, Aegis paid sales agents residing and working in the Southern District of Florida to market the Aegis JVs' securities, and the Defendants' acts and transactions constituting violations of the Securities Act and Exchange Act occurred in the Southern District of Florida. Moreover, there was at least one Aegis JV investor who resided in the District.

### IV.  FACTUAL BACKGROUND

#### A.  The Aegis Securities Offerings

12. Aegis offered securities in 15 oil and gas related joint venture projects based in Texas for which Aegis served as managing venturer (collectively, the "Aegis JVs"). Thirteen of the Aegis JVs were offered as turnkey oil and gas development projects. The other two projects consisted of a purported turnkey fracking wastewater disposal facility and an investment opportunity to purchase fractional interests in nine of the existing Aegis JVs. The Aegis JVs were all located in Texas.

13.     Aegis solicited investors primarily through an independent network of sales agents located throughout the country who would solicit potential investors using lead lists. During their solicitations, Aegis's sales agents touted Beason's many years of experience in the oil and gas industry and claimed that he had a record of developing profitable oil and gas opportunities. The agents also told investors that the investment had virtually no risk because, among other things, the projects were already up and running and the wells were located in areas that had produced millions of barrels of oil. During these sales calls, investors were promised returns on their investment ranging from 15% to 200%, with some being told that they would receive these returns within the first year, with ongoing income thereafter. In addition to the sales agents, Aegis offered its securities through its website, which provided general information about the investment opportunities.

14.     Beason also occasionally had direct communications with prospective investors regarding the investment opportunity, and also persuaded some of the existing investors to invest in new projects. In some of those instances, he paid himself a portion of the commission earned on those sales. Furthermore, Beason raised additional capital from existing investors by imposing additional special assessment fees.

15.     Beason would mail interested potential investors—whether contacted by a sales agent or by Beason directly—a private placement memorandum ("PPM") and other offering materials for the particular Aegis JV involved. The offering materials for each of the Aegis JVs also included an introductory letter to investors from Beason. In most of these letters and in other parts of the materials, Beason provided estimates for how much recoverable oil the well contained and what that oil production would mean for the investor in terms of income.

16. Aegis JV PPMs included a table titled "Estimated Expenditures of Venture Funds" that outlined expenses as follows: Joint Venture Organizational, Administrative & Marketing Expense (10%); Turnkey Oil and/or Gas Well Workover Expense (85%); and Turnkey Working Capital Reserve (5%). Beason drafted and approved the offerings materials, including the PPMs.

17. Additionally, through Aegis's website and by mail, those who decided to invest received company updates, including information about drilling status, any production delays, and the status of revenue payments.

18. The Aegis JVs' offering materials contained oil production and unit income projections. The materials included a "Project Summary" page and an introductory letter from Beason that highlighted the estimated total oil production and income per unit for each of the joint venture projects. Estimated oil production for the life of each of the Aegis projects varied from 100,000 barrels of oil for an earlier Aegis project to 8,500,000 barrels of oil for a later Aegis project. The price of a unit in the Aegis project ranged from $25,300 to $217,125, and estimated income per unit of investment ranged from $700,000 to $4,252,500.

19. The PPMs for each of the Aegis JVs included a biography of Beason that mentioned his experience in the oil and gas industry. Other parts of the materials highlighted Aegis's "Mission Statement" and "Values," including the statement that the company's most important value is "[e]mbracing honesty and integrity."

### B. Material Misrepresentations and Omissions

#### (1) Use of Investor Funds

20. The Defendants made false and misleading statements regarding the use of investor funds. Contrary to the representations contained in the offering documents, that organizational, administrative and marketing fees were to be 10%, in reality, approximately 43% of investor

proceeds for all offerings combined were devoted to these expenses. This amount included commissions paid to sales agents as high as 35%, which amount was not disclosed in the PPM, other offering materials, or orally. Indeed sales commissions totaled approximately 29% of investor proceeds.

21.     Likewise, although the offering documents claimed that 85% of the investor funds would be spent on the oil and gas well operations, the amount that went towards those expenses totaled only about 57% of the offerings' proceeds. Thus, with much less money allocated to the drilling operations, the likelihood diminished significantly that these ventures would be successful. Finally, no money was ever set aside for capital reserves as represented to investors.

### (2)     Projections Regarding Oil Production and Unit Income

22.     The production and income projections had no reasonable basis in fact because they were predicated on the assumption that 85% of investor funds would go to the oil and gas well operations. As mentioned above, bank records show that only about 57% of investor proceeds actually went to drilling operations because investor funds were misused to pay commissions to the sales agents. Given that Aegis was spending much less money on the oil and gas wells, there was less likelihood that the company could achieve the investment income projections.

23.     Indeed, the Aegis JVs have had very little actual production year after year. To date, according to numbers self-reported to the Texas Railroad Commission, the total oil production for all of Aegis JVs combined was merely approximately 10,000 barrels of oil, compared to the estimated 100,000 to 8,500,000 barrels per Aegis JV as touted in promotional materials. In addition, all of the Aegis JVs have, to date, only collected a *total* of approximately $532,000 in oil and gas revenues, compared to the estimated income of $700,000 to $4,252,500

*per unit* in the promotional materials. Thus, none of the investors have made anywhere near the returns projected by the Defendants.

24. Indeed, investors in six of the Aegis JVs have received diminutive revenue checks, some of which were accompanied with a distribution statement that detailed oil revenue generated and deductions for any expenses, taxes, and royalty payments. These disbursements totaled approximately $338,000 for the six Aegis JVs combined which amounted to an approximate 3% return on investment, as opposed to the estimated 15% to 200% promised by the sales agents. The investors in the other nine Aegis JVs have not received *any* distribution payments despite investing $24.8 million.

### (3) Beason's Disciplinary History

25. Despite the claims in the PPM of Beason's experience in the oil and gas industry, the offering materials failed to disclose that two states had issued orders of prohibition against Beason in connection with his past securities offerings, also oil and gas related.

26. Specifically, in April 2007, Illinois securities regulators issued an order prohibiting Beason and a previous company, where he served as president, from offering and selling securities in the state after determining Beason had defrauded investors in that offering. Prior to that, in January 1996, Wisconsin regulators issued an order of prohibition against Beason and another one of his previous companies for selling unregistered securities in that state.

### V. CLAIMS FOR RELIEF

### COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act

27. The Commission repeats and realleges paragraphs 1 through 26 of its Complaint.

28. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities issued by Aegis described in this Complaint and no exemption from registration existed with respect to these securities.

29. From October 2010 until October 2015, Aegis and Beason, directly and indirectly:

    (a)    made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

    (b)    carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

    (c)    made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

30. By reason of the foregoing Aegis and Beason violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Fraud in Violation of Section 17(a)(1) of the Securities Act

31. The Commission repeats and realleges paragraphs 1 through 26 of its Complaint.

32. From approximately October 2010 until October 2015, Aegis and Beason, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes or artifices to defraud.

33. By reason of the foregoing, Aegis and Beason violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III

### Fraud in Violation of Section 17(a)(2) of the Securities Act

34. The Commission repeats and realleges paragraphs 1 through 26 of its Complaint.

35. From approximately October 2010 until October 2015, Aegis and Beason, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

36. By reason of the foregoing, Aegis and Beason violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT IV

### Fraud in Violation of Section 17(a)(3) of the Securities Act

37. The Commission repeats and realleges paragraphs 1 through 26 of its Complaint.

38. From approximately October 2010 until October 2015, Aegis and Beason, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce and by the use of the mails, directly or indirectly negligently engaged in transactions, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

39. By reason of the foregoing, Aegis and Beason violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT V

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

40. The Commission repeats and realleges paragraphs 1 through 26 of its Complaint.

41. From approximately October 2010 until October 2015, Aegis and Beason, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

42. By reason of the foregoing, Aegis and Beason violated, and, unless enjoined, are reasonably likely to continue to violate Section 10(b) and Rule 10b-5(a) of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a)].

## COUNT VI

### Fraud in Violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act

43. The Commission repeats and realleges Paragraphs 1 through 26 of its Complaint.

44. From approximately October 2010 until October 2015, Aegis and Beason, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of securities.

45. By reason of the foregoing, Aegis and Beason violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(b) of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b)].

## COUNT VII

### Fraud in Violation of Section 10(b) and Rule 10b-5(c) of the Exchange Act

46. The Commission repeats and realleges Paragraphs 1 through 26 of its Complaint.

47. From approximately October 2010 until October 2015, Aegis and Beason, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

48. By reason of the foregoing, Aegis and Beason directly and indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(c) of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(c)].

## COUNT VIII

### Violation of Section 15(a)(1) of the Exchange Act
### Beason Only

49. The Commission repeats and realleges paragraphs 1 through 26 of its Complaint.

50. Beason made use of the mails or any means or instrumentality of interstate commerce to effect transactions in securities, or to induce or attempt to induce the purchase or sale of securities, without being associated with a broker or dealer that was registered with the Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(a).

51. By reason of the foregoing, Beason directly and indirectly violated, and unless enjoined, is reasonably likely to continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged and:

### I.
### Permanent Injunction

Issue a Permanent Injunction, restraining and enjoining Aegis and Beason, their agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)]; Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) and Rule 10b-5 of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]; and Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

### II.
### Disgorgement

Issue an Order directing Aegis and Beason to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint.

### III.
### Civil Penalty

Issue an Order directing Aegis and Beason to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

## IV.
## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## V.
## Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## VII. DEMAND FOR JURY TRIAL

The Commission hereby demands trial by jury.

Respectfully submitted,

By: *s/Russell Koonin*
Russell Koonin
Senior Trial Counsel
Fla. Bar No. 474479
Direct Dial: (305) 982-6385
Facsimile (305) 536-4154
E-mail: kooninr@sec.gov

*s/Shan Chang*
Shan Chang
Counsel
S.D. Fla. Bar No. A5502239
Direct Dial: (305) 982-6319
Facsimile (305) 536-4146
Email: changsh@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, FL 33131